LEE, P.J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On April 8, 2002, McNair Smith, Jr., brought a personal injury tort action against the City of Brookhaven, the Brook-haven Police Department, Officer Tecumseh Warren, and Patrick Hardy. Smith alleged the following claims: false arrest, unreasonable seizure, violation of due process rights, malicious prosecution, abuse of process, gross negligence, and assault and battery. The City, the Police Department, and Officer Warren responded on May 29, 2002. The suit against Patrick Hardy was settled during the early stages of litigation.
¶ 2. The defendants later filed their motion for summary judgment on July 21, 2003, claiming that Smith’s claims against the City were barred by section 11^16- *182 9(l)(c) (Rev.2002) of the Mississippi Tort Claims Act, Miss.Code Ann. § 11-46-1 to 23 (Rev.2002), and that his claims against Officer Warren were barred by section 11-46-7(2) (Rev.2002). A hearing on the matter was held August 28, 2003, at which time the Lincoln County Circuit Court granted summary judgment for the defendants as to all claims. Smith now appeals to this Court asserting the following issues: (1) the trial court erred in granting summary judgment; (2) Officer Warren acted in reckless disregard for the safety and well-being of Smith; (3) there was a material question of fact as to whether Smith was engaged in criminal activity at the time of the incident; and (4) Officer Warren was not individually immune from the suit. Finding no error, we affirm.
FACTS
¶ 3. On January 5, 2001, around 5:30 p.m., Smith and Stephanie Hardy were in his car on the way to pick up Stephanie’s car keys from her mother. Patrick Hardy, Stephanie’s estranged husband, began to follow Smith and Stephanie in his ear. Patrick and Stephanie’s eight year old son also was in the car with Patrick. Upon seeing Patrick’s car approaching, Smith pulled over at which point Patrick exited his own car, pulled out a gun and fired two shots into Smith’s car. Smith immediately drove away and a car chase between the two ensued. At one point the two cars reached speeds of 110 miles per hour.
¶ 4. During the chase Stephanie called 911 and informed the dispatcher of the situation. The dispatcher at the Lincoln County Sheriffs Office directed Smith and Stephanie into Brookhaven. At this time Officer Warren, who was a law enforcement trainee at the time of the incident, received a call from the dispatcher informing him that two speeding cars were entering the city limits. Officer Warren was also told that both cars were driving recklessly and that shots had been fired. Upon sighting the cars, Officer Warren pursued them with his blue lights and siren activated. Other law enforcement personnel were also in pursuit of the speeding cars. After traveling several blocks, Officer Warren was able to pull both cars over into a parking lot. However, Smith pulled away from the scene and, after traveling several more blocks, was finally forced off the road by Brookhaven Police officers Sergeant Scott Brister and Captain Bobby Bell. Sgt. Brister and Capt. Bell assisted Officer Warren in subduing Smith while the Lincoln County Sheriffs Department dealt with Patrick. Officer Warren did pull his gun on Smith at the time Smith was asked to exit his vehicle.
¶ 5. Smith and Stephanie were transported to the police station while Patrick drove his own vehicle. Upon searching both cars, two guns were found in Patrick’s car. Smith and Patrick were issued two tickets each for reckless driving, failure to yield to the blue lights, and speeding. After appearing in Municipal Court to object to the charges in the two tickets, the judge found Smith not guilty on all three charges. The police department then dropped the charges against Patrick.
DISCUSSION OF ISSUES
I.DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT?
II. DID OFFICER WARREN ACT IN RECKLESS DISREGARD FOR THE SAFETY AND WELL-BEING OF SMITH?
III. WAS THERE A MATERIAL QUESTION OF FACT AS TO WHETHER SMITH WAS ENGAGED IN CRIMINAL ACTIVITY AT THE TIME OF THE INCIDENT?
¶ 6. As the first three issues pertain to Smith’s argument that summary *183 judgment was improper, we will analyze them together. Smith argues that the trial court erred in granting summary judgment in favor of the appellees. In reviewing a grant of summary judgment, this Court employs a de novo standard. If the pleadings, depositions, answers to interrogatories and admissions, together with any affidavits, show there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law and summary judgment should be entered for the movant. Boyles v. Schlumberger Technology Corp., 832 So.2d 503(¶ 5) (Miss.2002). According to McClinton v. Delta Pride Catfish, Inc., 792 So.2d 968(¶ 17) (Miss.2001), mere conclusory allegations are insufficient to defeat a motion for summary judgment.
¶ 7. According to Mississippi Code Annotated Section 11-46-9 (Rev.2002),
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury....
¶ 8. Smith contends that there were genuine issues of material fact that precluded a granting of summary judgment, namely that he swore to one version of the facts while Officer Warren testified as to another set of facts. Smith states that he was not speeding, did not drive in a reckless manner, and did not fail to yield to the blue lights. Officer Warren testified as to the opposite, that Smith was speeding, driving recklessly, and failed to yield. Smith further argues that because the municipal court found him not guilty of the charges, the trial court was prohibited from finding that he was engaged in criminal activity. However, in his deposition, Smith admitted to speeding, stating that at one point hé was driving his car over 100 miles per hour. Smith also admitted that he failed to stop upon seeing the police cars behind him.
¶ 9. In his affidavit, Sgt. Brister stated that he pursued both cars and that both cars were traveling at a high rate of speed and in a reckless manner. Sgt. Brister further stated that he witnessed Smith stop in the parking lot and then drive away at a high rate of speed. In his affidavit, Capt. Bell stated that as he arrived at the parking lot where Officer Warren had stopped Smith and Hardy, he witnessed Smith drive away. Both Sgt. Brister and Capt. Bell each stated that they then pursued Smith for several blocks until they were able to force Smith off the road. Smith also admitted that he stopped in the parking lot, but decided to drive away.
¶ 10. Smith further argues that Officer Warren acted in reckless disregard for his safety and well-being. In Turner v. City of Ruleville, 735 So.2d 226(¶ 19) (Miss.1999), the supreme court held that reckless disregard is synonymous with willfulness and wantonness and that it includes an element of intent to harm. Smith states that Officer Warren acted in reckless disregard because, as a law enforcement trainee, he was not under the direct control or supervision of a certified law enforcement officer; he was not justified in drawing his gun; and he failed to investigate the case prior to issuing citations. Smith’s only argument concerning Officer Warren’s lack of supervision is that Officer Warren was alone in his patrol car at the time of the incident. However, the record indicates that Capt. Bell and Sgt. Brister *184 were on the scene and Capt. Bell was instructing Officer Warren as to the proper handling of the situation.
¶ 11. Although Smith is correct in stating that “the use of firearms by a police officer is not justified except to protect himself from reasonably apparent bodily harm or death at the hands of the suspect,” Whitten v. Cox, 799 So.2d 1(¶ 11) (Miss.2000), Smith fails to provide any facts showing that Officer Warren was not justified in drawing his gun. On the contrary, Officer Warren had received a call that two cars were speeding towards the city limits and that shots had been fired. Upon reaching the speeding cars, Officer Warren pursued both cars with his lights and siren activated, but neither car slowed. Finally, both cars pulled over, but before Officer Warren could apprehend either driver, Smith sped away. After Smith was pulled over again by Capt. Bell and Sgt. Brister, Officer Warren, not knowing which driver had fired the shots, drew his gun in order to protect himself.
¶ 12. With regards to Smith’s argument that Officer Warren acted in reckless disregard by failing to investigate the incident before issuing the traffic citations, Smith cites to Foster v. Noel, 715 So.2d 174(¶ 31) (Miss.1998), for the proposition that a police officer who fails to investigate a case before obtaining an arrest warrant is acting in reckless disregard. We fail to see how issuing traffic citations equates to obtaining an arrest warrant. Regardless of Smith’s reason for speeding, he was still speeding and failing to yield to the blue lights. At no place in his deposition does Smith state that the 911 operator instructed him or Stephanie to speed or ignore the police officer’s chasing them. Furthermore, Officer Warren was a witness to most of the incident, enabling him to have first hand knowledge of the violations with which he charged Smith. We fail to find that Officer Warren acted in reckless disregard for the safety and well-being of Smith.
¶ 13. As Smith has failed to point to any genuine issues of material fact, we find that the trial court was correct in granting the motion for summary judgment in favor of the defendants.
IV. WAS OFFICER WARREN INDIVIDUALLY IMMUNE FROM THE SUIT?
¶ 14. Smith also contends that Officer Warren was not acting within the course and scope of his employment as a police officer during the incident and, therefore, Officer Warren was individually liable. According to Mississippi Code Annotated Section 11-46-7(2) (Rev.2002), an employee will not be held personally hable for “acts or omissions occurring within the course and scope of the employee’s duties” unless “the employee’s conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.”
¶ 15. Smith again argues that Officer Warren was not acting under the direct supervision of a certified officer at the time of the incident and, consequently, was not acting within the course and scope of his employment. However, we previously found that Officer Warren was in fact directly under Capt. Bell’s supervision. Furthermore, Smith’s argument relates to Officer Warren’s ability to execute his duties as a police officer rather than whether he was acting within the course and scope of that employment.
¶ 16. Although Smith is arguing that Officer Warren acted with malice for the first time in this appeal, we will discuss this issue. In arguing that Officer Warren acted with malice, Smith alleges that Officer Warren forced Smith to go to trial on the traffic citations, that Officer Warren was trying to protect Hardy, that Officer *185 Warren knew Smith was innocent but charged him anyway, and that Officer Warren only dropped the charges against Hardy after Smith was found not guilty. As we stated previously, mere conclusory allegations are insufficient to defeat a motion for summary judgment. McClinton, 792 So.2d at ¶ 17. Smith has failed to produce any record evidence that Officer Warren acted with malice towards Smith; thus we decline to find Officer Warren individually liable. This issue is without merit.
¶ 17. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ„ CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.